2012 COA 17

**SWINERTON BUILDERS, Plaintiff–Cross–Appellant,**

v.

**Craig NASSI, Defendant–Cross–Appellee.**

No. 10CA1847.

Colorado Court of Appeals, Div. III.

Feb. 2, 2012.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2011.

Faegre Baker Daniels, LLP, Laurence W. DeMuth, III, Boulder, Colorado; Faegre Baker Daniels, LLP, Marie E. Williams, Stephen A. Wichern, Denver, Colorado, for Plaintiff–Cross–Appellant.

Opinion by Judge GABRIEL.

¶ 1 Plaintiff, Swinerton Builders, appeals the district court's order denying its motion to recover the attorney fees and costs that it incurred in successfully piercing Beauvallon Corporation's corporate veil, in order to enforce a previously obtained arbitration award against Beauvallon's president, defendant, Craig Nassi. As an apparent matter of first impression in Colorado, we conclude that a party who prevails in an action to pierce the corporate veil of a corporation may recover the attorney fees and costs incurred in that action if (1) the action was brought to enforce a breach of contract judgment against the corporation, and (2) the contract underlying the judgment authorized an award of fees and costs for enforcing the judgment against the corporation. Accordingly, we reverse the district court's order and remand for a determination and award of the reasonable attorney fees and costs that Swinerton incurred in its successful effort to pierce Beauvallon's corporate veil in order to enforce the arbitration award against Nassi.

## I. Background

¶ 2 Swinerton entered into a construction contract with Beauvallon in 2001. This contract, as amended, incorporated by reference the dispute resolution provisions of American Institute of Architects Document A201, which provided for the arbitration of claims arising out of or related to the contract. The

contract also contained a fee-shifting provision, which provided:

> In the event of any litigation between the parties, the prevailing party shall be entitled to reimbursement for all reasonable attorneys' fees, expert fees, court costs, and all other third-party costs of the litigation incurred by the prevailing party.

¶ 3 After the construction project was completed, Swinerton filed a demand for arbitration, asserting breach of contract claims against Beauvallon and Nassi and an unjust enrichment claim against Beauvallon. The contract claim against Nassi arose out of an alleged personal guarantee.

¶ 4 Subsequently, Swinerton voluntarily dismissed its claim against Nassi without prejudice. Swinerton, however, expressly noted that it had reason to believe that Beauvallon might be an alter ego of Nassi. Thus, Swinerton reserved the right to assert a claim against Nassi to pierce the corporate veil, once the evidence was more fully developed.

¶ 5 Thereafter, Swinerton moved to re-join Nassi in the arbitration, contending that discovery had indeed established that Beauvallon was Nassi's alter ego. The arbitrators denied the motion, however, concluding that they lacked jurisdiction over a claim against Nassi.

¶ 6 Ultimately, the arbitrators ordered Beauvallon to pay Swinerton more than $1 million in damages, interest, attorney fees, and costs, and the district court subsequently confirmed this award.

¶ 7 Separately, Swinerton brought the present district court action against Nassi, seeking, among other things, (1) a declaratory judgment that Beauvallon is Nassi's alter ego and that, therefore, Nassi is bound by the terms of the construction agreement between Beauvallon and Swinerton and by any award issued by the arbitrators against Beauvallon, and (2) to pierce Beauvallon's corporate veil. The district court ultimately ruled in favor of Swinerton, concluding that Swinerton could pierce Beauvallon's corporate veil and hold Nassi personally liable for the arbitration award against Beauvallon.

¶ 8 Swinerton then sought to recover the attorney fees and costs that it incurred in the veil-piercing litigation. In essence, it argued that because the court had found that Swinerton could pierce Beauvallon's corporate veil, Nassi was liable for Swinerton's attorney fees under the construction contract's fee-shifting provision.

¶ 9 The district court denied Swinerton's motion, finding:

> [A]warding attorney fees through the contractual provision is inappropriate. Such attorney fees expended in the underlying arbitration action were already awarded in the arbitration decision. The attorney fees necessary for this [veil-piercing] action are sep[a]rate and distinct [from the arbitration award fees], therefore, not awardable under the contract retroactively. An award of attorney fees for this action, due to outcome, would violate the "American Rule" and this court can find no exception that allows for such application, regardless of the argument of Swinerton.

¶ 10 Nassi then appealed the veil-piercing judgment, and Swinerton cross-appealed the denial of its motion for fees and costs. Nassi, however, later waived his appeal. Accordingly, the only issue now before us is Swinerton's appeal of the district court's refusal to award attorney fees and costs for the veil-piercing litigation.

## II. Standard of Review

¶ 11 We construe contractual fee-shifting provisions de novo to determine whether they entitle prevailing parties to attorney fees. *Meadow Homes Dev. Corp. v. Bowens,* 211 P.3d 743, 749 (Colo.App.2009); *see also In re Marriage of Tognoni,* —— P.3d ——, ——, 2011 WL 5436480 (Colo.App.2011) ("We review de novo ... the legal analysis employed by the [district] court in reaching a decision on attorney fees.").

## III. Attorney Fees

¶ 12 Swinerton contends that the district court erred in refusing to award it the attorney fees and costs that it incurred in its successful veil-piercing action. In the circumstances presented here, we agree.

¶ 13 Numerous courts have held that an action to pierce the corporate veil is not a separate and independent cause of action, but rather is merely a procedure to enforce an underlying judgment. *See, e.g., Int'l Fin. Servs. Corp. v. Chromas Technologies Canada, Inc.,* 356 F.3d 731, 736 (7th Cir.2004) ("Piercing the corporate veil, after all, is not itself an action; it is merely a procedural means of allowing liability on a substantive claim, here breach of contract."); *In re Wheeler,* 444 B.R. 598, 608 (Bankr.D.Idaho 2011) (noting that an action to pierce the corporate veil is not an independent cause of action, but rather is a means of imposing liability for an underlying cause of action); *Leek v. Cooper,* 194 Cal.App.4th 399, 125 Cal.Rptr.3d 56, 71 (2011) ("A claim based upon an alter ego theory is not itself a claim for substantive relief. It is a procedural device by which courts will disregard the corporate entity in order to hold the alter ego individual liable on the obligations of the corporation.") (citation omitted); *Oceanics Schs., Inc. v. Barbour,* 112 S.W.3d 135, 145 (Tenn.Ct.App.2003) (noting that a lawsuit against an alter ego in which the plaintiff seeks to pierce the corporate veil in connection with a previously obtained judgment against a corporation is not a separate and independent cause of action).

¶ 14 To determine whether piercing the corporate veil is appropriate, a court must consider three factors.

¶ 15 First, the court must decide whether the corporate entity is the alter ego of the shareholder. *In re Phillips,* 139 P.3d 639, 644 (Colo.2006). A corporation is a shareholder's alter ego when the corporation is a mere instrumentality for the transaction of the shareholder's own affairs, and there is such a unity of interest in ownership that the separate personalities of the corporation and the shareholder no longer exist. *Id.; Sheffield Servs. Co. v. Trowbridge,* 211 P.3d 714, 720 (Colo.App.2009).

¶ 16 Second, the court must consider whether justice requires recognizing the substance of the relationship between the shareholder and the corporation over the form because the corporate fiction was used to perpetrate a fraud or defeat a rightful claim. *Phillips,* 139 P.3d at 644. The corporate veil may be pierced only when the corporate form was used to shield a dominant shareholder's improprieties. *Id.*

¶ 17 Third, the court must evaluate whether an equitable result will be achieved by disregarding the corporate form and holding the shareholder personally liable for the acts of the corporation. *Id.* Achieving an equitable result is the "paramount goal" of traditional piercing of the corporate veil. *Id.*

¶ 18 A claimant seeking to pierce the corporate veil must make a clear and convincing showing that each of the foregoing factors has been satisfied. *Id.* If a claimant satisfies this burden and the court pierces the corporate veil, then the court may ignore the independent existence of the corporate entity and hold the individual shareholder of the corporation liable for the corporation's obligations. *Phillips,* 139 P.3d at 644; *accord United States v. Acambaro Mexican Restaurant, Inc.,* 631 F.3d 880, 883 (8th Cir.2011). Thus, as pertinent here, when the corporate veil is pierced, a shareholder who did not sign the corporate contracts at issue may be held personally liable for the contractual obligations of the corporation. *See, e.g., Smith v. Multi–Financial Sec. Corp.,* 171 P.3d 1267, 1272 (Colo.App.2007) (noting that courts have bound nonsignatories to arbitration agreements under principles of veil-piercing); *see also Cooper v. Meridian Yachts, Ltd.,* 575 F.3d 1151, 1169 (11th Cir. 2009) (noting that under a limited set of circumstances, including veil-piercing, a signatory may bind a nonsignatory to a contract); *Kingsley Capital Mgmt., LLC v. Sly,* 820 F.Supp.2d 1011, 1018–19, 2011 WL 5008520, *5 (D. Ariz. No. CV 10–02243–PHX–NVW, Sept. 30, 2011) ("[T]hose who have not signed a contract containing an arbitration clause may sometimes benefit from it through doctrines such as assumption, agency, veil-piercing/alter ego, and estoppel."); *F. Hoffmann–La Roche Ltd. v. Qiagen Gaithersburg, Inc.,* 730 F.Supp.2d 318, 329 (S.D.N.Y.2010) (noting that nonsignatories may be bound to arbitration agree-

ments under a veil-piercing or alter ego theory).

¶ 19 Applying these principles to the facts before us, we conclude that with Beauvallon's veil pierced, Nassi is responsible for Beauvallon's contractual obligations, including its obligations under the contract's fee-shifting clause. The question thus becomes whether the claim against Nassi to pierce the corporate veil was sufficient to trigger the fee-shifting clause in Beauvallon's construction contract with Swinerton. We conclude that it was.

¶ 20 For the reasons set forth above, Swinerton's action to pierce the corporate veil here was not a separate and independent claim. Rather, it was a procedural mechanism to enforce the arbitration award against Beauvallon. Thus, the veil-piercing lawsuit was, in effect, an enforcement action against Beauvallon. No party has denied that, had Swinerton sued Beauvallon to enforce the arbitration award, it would have been entitled to recover fees under the contractual fee-shifting provision. Indeed, the district court awarded Swinerton fees for its post-arbitration effort to confirm the arbitration award against Beauvallon. In light of the legal principles set forth above, we perceive no basis for reaching a different result where, as here, Swinerton's enforcement action was filed against Nassi, after Beauvallon's veil was pierced. (No party has raised, and we therefore do not address, the applicability or impact, if any, of the merger doctrine, which generally provides that, upon entry of a judgment, a plaintiff's claims against a defendant are merged into the judgment, see, e.g., Colo. Interstate Gas Co. v. Chemco, Inc., 987 P.2d 829, 834 (Colo.App. 1998).)

¶ 21 Wachovia Securities, LLC v. Jahelka, 586 F.Supp.2d 972 (N.D.Ill.2008), is substantially on point. There, Wachovia had obtained a substantial arbitration award against a corporation. Id. at 978. The corporation failed to pay the judgment, however, and Wachovia sued to pierce the corporate veil and to hold the corporation's individual shareholders liable for the arbitration award. Id. The court ruled for Wachovia and, relying on a fee-shifting provision in the contract between the corporation and Wachovia, ordered the shareholders to pay the attorney fees that Wachovia had incurred in its veil-piercing action. Id. at 1013–14. In so holding, the court observed that, with the corporation's veil pierced, the shareholders were liable for the corporation's obligations under the fee-shifting provision. Id. at 1014. The court further noted that "[u]nder Illinois law, a party who prevails on a veil-piercing claim can recover attorneys' fees if the underlying statute or contract provides for an award of fees." Id. at 1013. In reaching this conclusion, the court rejected the shareholders' assertion that allowing Wachovia to recover fees from them amounted to "double-dipping," because (1) Wachovia had incurred the veil-piercing fees in seeking to enforce its judgment against the corporation, and (2) the shareholders' refusal to pay the judgment had forced Wachovia to incur the fees and costs that it expended in the veil-piercing action. Id. at 1014.

¶ 22 We agree with the reasoning in Wachovia and follow it here. Specifically, as in Wachovia, when the district court determined that Swinerton could pierce Beauvallon's corporate veil, Nassi became liable for, among other things, Beauvallon's contractual obligations under the fee-shifting provision. Moreover, as in Wachovia, Swinerton incurred the attorney fees at issue here in attempting to enforce its judgment against Beauvallon, and Nassi's refusal as president of Beauvallon to pay the judgment forced Swinerton to bring the veil-piercing action.

¶ 23 Accordingly, we conclude that Swinerton is entitled to recover the reasonable attorney fees incurred in the veil-piercing action, and we remand this case to the district court for a determination and award of the appropriate amount of such fees.

¶ 24 For the same reasons, we grant Swinerton's request to recover from Nassi the reasonable fees that it incurred in this appeal. We exercise our discretion pursuant to C.A.R. 39.5 and direct the district court to determine the reasonable amount of such fees on remand.

## IV. Costs

¶ 25 Swinerton also contends that the district court erred in refusing to grant it the costs that it incurred in the veil-piercing

litigation, because the contractual fee-shifting provision allowed for the recovery of such costs. For the reasons set forth above, we agree (and we also note that Swinerton is entitled to costs under section 13–16–104, C.R.S.2011). Accordingly, on remand, the district court shall award Swinerton the reasonable costs that it incurred in the veil-piercing action.

## V. Conclusion and Remand Order

¶ 26 For these reasons, the order is reversed, and the case is remanded to the district court to determine and award the reasonable amount of fees and costs to be awarded to Swinerton and against Nassi in connection with the veil-piercing litigation, as well as the amount of reasonable attorney fees incurred in this appeal.

Judge ROY and Judge TERRY concur.